United States District Court
Southern District of Texas
**ENTERED**
January 24, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **VS.** § | **6:18-CR-112** |
| § | |
| **CHRISTIAN ALEJANDRO PEREZ** § | |

## MEMORANDUM AND ORDER

On Friday, January 19, 2024, the Court held a final hearing on the matter of revocation of Defendant Christian Alejandro Perez's term of supervised release. At the conclusion of the hearing, the Court ordered parties to submit supplemental briefs, addressing whether Mr. Perez had violated his term of supervised release by evading arrest or detention with a motor vehicle in violation of Tex. Penal Code § 38.04(a) and (b)(1)(B). After considering the parties' briefing and oral arguments, as well as the testimony presented at the hearing, the Court **DENIES** the government's request to revoke Mr. Perez's term of supervised release.

### I.   BACKGROUND

On February 6, 2020, United States District Judge John D. Rainey sentenced Mr. Perez to 78 months of custody, to be followed by three years of supervised release. Mr. Perez commenced his term of supervised release on May 2, 2023. One condition of his term of supervised release was that he could not commit another federal, state, or local crime.

On December 7, 2023, the United States Probation Office alleged that Mr. Perez had committed a new criminal offense, in violation of the terms of his supervised release. In a January 19, 2024 revocation hearing, the government presented evidence that Mr. Perez had violated Tex. Penal Code § 38.04(a) and (b)(1)(B), that is, the offense of evading arrest or

1

detention with a motor vehicle. The government's sole evidence supporting this alleged violation was the testimony of Officer Erika Villarreal.

Officer Villarreal testified that on September 11, 2023, she went to the home of Mr. Perez's family in response to a "mental health call." Once she arrived, Mr. Perez's father explained that Mr. Perez was experiencing a mental health crisis. Officer Villarreal testified that she observed Mr. Perez's behavior to be quite erratic; she explained that his demeanor rapidly switched between calm and aggressive. She stated that in the periods that Mr. Perez was behaving more aggressively, he appeared to be "anti-law enforcement" and angry at his parents. She recalled Mr. Perez making statements that his parents would burn in hell, and that he would rather be shot by the police than return to prison. Officer Villarreal's attempts to deescalate the situation proved unsuccessful, and Mr. Perez drove away from the home. Mr. Perez's family told Officer Villarreal that he was likely acting erratically because he was experiencing withdrawals from drugs. However, Officer Villarreal did not know whether he was taking or prescribed any medication, and did not ask Mr. Perez or his family for clarification.

Later that day, Officer Villarreal learned that Mr. Perez had returned home and retrieved a handgun.[1] She attempted to locate and pursue Mr. Perez, and ultimately found him in a stopped vehicle. She told him not to leave, but he drove off, and she was unable to pursue him due to heavy traffic. Later, she learned that Mr. Perez had crashed his vehicle; she arrived on the scene a few minutes after his crash. When she arrived, Mr. Perez ran into oncoming traffic, and stated that he hoped the police would hurt or kill him. Officer Villarreal and her fellow deputies tased

---

[1] Officer Villarreal testified that a dispatch call and Mr. Perez's father had informed her that Mr. Perez had gone home to retrieve a handgun. These out-of-court statements are only admissible insofar as they are offered to prove their effect on Officer Villarreal—that is, to show that Officer Villarreal believed that Mr. Perez had gone home to retrieve a handgun. *See United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to prove the statement's effect on the listener.").

2

and handcuffed Mr. Perez, at which point he began banging his head on the ground, causing significant bleeding from his forehead. Officer Villarreal then rode in an ambulance with Mr. Perez to the hospital. She testified that during the ride, he was attempting to get out of his restraints, and behaving aggressively towards paramedics. At the hospital, he was subjected to an Emergency Detention Order (that is, a 72-hour psychiatric hold) due to his suicidal and homicidal statements.

## II.     LEGAL STANDARD

To revoke Mr. Perez's term of supervised release, the Court must find by a preponderance of the evidence that Mr. Perez violated a condition of his release. *United States v. Spraglin*, 418 F.3d 479, 480 (5th Cir. 2005).

Texas Penal Code § 38.04(a)—the provision Mr. Perez allegedly violated—provides, "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him."[2] In Texas, a person acts intentionally "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* at § 6.03(a). An individual has not committed the offense of evading arrest unless they possess "knowledge that a peace officer is attempting lawfully to arrest or detain" them before fleeing. *Riggs v. State*, 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. Ref'd).

## III.    ANALYSIS

The Court finds that the government has not shown by a preponderance of the evidence that Mr. Perez had knowledge that Officer Villarreal was attempting a lawful arrest when he drove away from her, or when he ran from her on foot. Officer Villarreal came to Mr. Perez's

---

[2] The Probation Office further alleged that Mr. Perez violated Tex. Penal Code § 38.04(b)(2)(A), which provides that the offense is a third-degree felony if the person flees in a vehicle.

home to de-escalate his mental health crisis; not to arrest or detain him. At no point did Officer Villarreal testify that she told Mr. Perez that she was attempting to arrest him. Mr. Perez's behavior was erratic, and he stated at several points throughout the day that he wished to be harmed—or even killed—by police officers. Given these circumstances, the Court agrees with Defendant's contention that it is possible that Mr. Perez fled from Officer Villarreal under the mistaken impression that she was trying to hurt him. At the very least, the Court finds that government has not demonstrated that it is more likely than not that Mr. Perez possessed the requisite intent to commit the alleged offense.

## IV.    CONCLUSION

For the forgoing reasons, the Court finds that the government has not proved that Mr. Perez violated the terms of supervised release by committing a new violation of law. The Court **DENIES** the government's request to revoke Mr. Perez's term of supervised release.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 24th day of January, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE